GARY S. HANN, pro se
Plaintiff
yragnnah@gmail.com
P.O. Box 711
Cathedral City, CA 92235-0711
734-480-4140

**FILED**
CLERK, U.S. DISTRICT COURT

**06/26/2023**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AP _____ DEPUTY

FEE PAID

I/S
B/O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

|  |  |
|---|---|
| _____ | Case No. <u>5:23-cv-01252-SSS(ASx)</u> |
| GARY S. HANN, | |
|       PLAINTIFF, | JUDGE: HON. _____ |
|       VS. | MAGISTRATE JUDGE: _____ |
| American Contract Bridge League Inc. (ACBL), | COMPLAINT FOR GRAVE DAMAGES FROM PERSONAL PHYSICAL INJURY AND PHYSICAL SICKNESS, KNOWING AND MALICIOUS DENIAL OF BY-LAWS AND RULES AND PRACTICES |
|       Defendant. | 6RIGHTS, FAILURE TO PROTECT FROM KNOWN CHEATING IN DEPRIVATION OF A NATIONAL TITLE, LACK OF JURISDICTION OVER MASSIVELY OVERCHARGED PURPORTED VIOLATION, DEFAMATION AND BLATANT DISREGARD FOR PROTECTIVE CALIFORNIA MANDATES |
|  | JURY TRIAL DEMANDED |

1

TO THE HONORABLE _____, UNITED STATES DISTRICT JUDGE, AND ALL INTERESTED PARTIES:

Now comes 100% Disabled Retiree and Plaintiff Gary S. Hann ("Hann"), who demands a jury trial and who deposes and says as follows:

**JURISDICTIONAL STATEMENT**

1.  Diversity jurisdiction in federal court under 28 U.S.C. Section 1332 exists because its two elements have been met:  (1) the amount in controversy far exceeds $75,000, and (2) Plaintiff's nearly decade of citizenship in Riverside County, California (addressed in Venue, post), differs from Defendant;  the American Contract Bridge League Inc. (hereinafter "ACBL") is a New York Corporation, with principal administrative offices in Horn Lake, MS.

**PREAMBLE**

2.  Plaintiff Gary S. Hann ("Hann") is a 100% disabled retiree and who has been denied due process rights, ADA rights, and also inalienable State of California general and other rights.

3.  Hann brings this action with respect and deference, but simply cannot comprehend the violations of long settled law and

the personal trauma intentionally caused him by Defendants.  Hann brings this action without improper purpose, in good faith and in sincere belief that the claims made are correct, meritorious and predicated on a firm legal foundation, and therefore deserving of full consideration.

4.   Hann further avers that statements of fact herein are true and accurate to the best of his information, knowledge and belief, and that he is fully competent to testify thereto.

5.   Hann respectfully requests that this Honorable Court not reject this matter for technical or procedural reasons, but rather that this Court either correct such deficiencies sua sponte, or permit Hann to make such minor technical or procedural changes as may be found from time to time.  *Haines v. Kerner*, 404 US 519, 520, 92 S.Ct. 594, 596 (1972).

6.   Hann additionally respectfully reminds the Court, and requests, that he be given any reasonable latitude in accordance with and as has been mandated by federal decisions and practice. *Castro v. US*, US No. 02-6683, 124 S.Ct. 786 (2003); *Boswell v. Mayer*, 169 F.3d 384 (6th Cir. 1999), *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991).

**VENUE**

3

7.  Venue is appropriately in this Court pursuant to 28 U.S.C. 1391(b)(1) and (2) because Plaintiff Hann resides in Riverside County, CA, and has been heavily damaged, in in large part within Riverside County, the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, all through electronic communication including but not limited to Zoom video connections.

**THE PARTIES**

8.  Plaintiff Gary S. Hann, a resident of Riverside, CA for over 9 years, has never committed any seriously actionable harm on anyone, in the ACBL, and whose nearly continuous membership began in 1967.  He has tirelessly brought support and joy to other tournament bridge players, and has been vociferous about taking swift and strong action against those accused of the most serious violation in all of bridge, cheating at the game so many love and hold dear.

9.  Plaintiff Hann was a member of the ACBL Board of Directors from 1989-1989, and subsequently, Chairman of the then named Board of Governors, serving for an unprecedented 4 years to wide acclaim, including warm approvals from such luminaries at the time as Alfred "Freddie" Sheinwold, and Edgar Kaplan.

10.   The American Contract Bridge League (hereinafter, "ACBL"), is a senior oriented organization of about 130,000 members, and a median age of about 72.  It is incorporated in New York State.

11.   The ACBL has a classic structure, including a Separation of Powers, the Executive, presided by and Executive Director, hereinafter "ED".  the Legislative, comprised of the Board of Directors (hereinafter BoD) and the Board of Governors (recently renamed "Advisory Committee", hereinafter "AC", and the Judicial, comprised of variously designated and appointed "Committees".

12.   All Branches are presumptively Co-Equal, and under the Doctrine of Separation of Powers, do not regulate each other.

13.   Defendant ACBL has had poor results in recent years from legal actions against it.  Of three well known lawsuits against the ACBL, when it fired ED Bahar Gidwani in 2018, he sued for breach of contract, and was awarded and paid a reported three-quarters of a million dollars in compensation.  Likewise, when it made false accusations of sexual harassment against BoD Member Bruce Blakely, and began imposing unilateral sanctions on him, he sued, successfully avoided any demands for arbitration, and also reportedly won with a settlement in that three-quarter of a million dollar range.

14.  Finally, the ACBL Tournament Directors sued several years ago for withheld overtime pay, and won a federal district court ruling in which the amount owning by the ACBL is still undetermined and parts of the judgment are currently in front of the Court of Appeals; but the Tournament Directors have won on the merits and legal fees owing by the ACBL could well be in the $400,000 range.


**STATEMENT AND JUDICIAL NOTICE I ON ARBITRATION**

15.  PLAINTIFF HANN ("HANN") WAS NOT A MEMBER OF THE ACBL AT THE TIME OF THE INCIDENT DESCRIBED BELOW, WHICH ALLEDGEDLY TOOK PLACE AT A OFFICIAL LEGISLATIVE MEETING OF THE ACBL'S BOARD OF GOVERNORS, ESTABLISHED AND RUN UNDER ARTICLE IX OF THE ACBL BY-LAWS.

16.  HANN HAS NEVER TO HIS KNOWLEDGE BEEN MADE AWARE OF ANY ARBITRATION POLICY, AND HAS NEVER SEEN OR SIGNED SUCH A POLICY.

17.  A NON-MEMBER OF THE ACBL IS NOT BOUND BY ANY RULES OR PROCEDURES THAT HAVE BEEN AGREED BY MEMBERS.

18.  THEREFORE, HANN HAS NO OBLIGATION WHATEVER TO ARBITRATE, AND SOUGHT ALL ADMINISTRATIVE REMEMEDIES BEFORE FILING THIS LEGAL ACTION.


**STATEMENT AND JUDICIAL NOTICE II ON JURISDICTION**

19.  HANN WAS NOT A MEMBER OF THE ACBL WHEN THE PURPORTED INCIDENT OCCURRED, AND WAS NOT A PARTICIPANT IN ANY ACBL SANCTIONED EVENT AT THE TIME.  THE PLAIN AND SIMPLE DECLARATION AT THE BEGINNING OF THE CODE ON DISCIPLINARY REGULATIONS (CDRs) FOR 2020, SHOWS THAT NO JURISDICTIONS IS THEREBY HAD FOR DISCIPLINARY MATTERS.

20.  ATER IN THOSE CDRs, THAT REFER TO ONLINE EVENTS AND ACTIVITIES, HANN WAS IN A MEETING, WHICH HAS NEVER

**BEEN DESCRIBED AS AN EVENT OR AS AN ACTIVITY, AND IS INAPPLICATION TO HANN'S MATTER**

## STATEMENT AND JUDICIAL NOTICE III ON ADHERING TO BY-LAWS AND PROCEDURES, RULES, AND CODES AS A BINDING CONTRACT

21.   Plaintiff offers the following decision of the California Supreme Court, as an authority:

> 31 Cal.2d 139 (1947)
> CECIL B. DeMILLE, Appellant, v. AMERICAN FEDERATION OF RADIO ARTISTS, LOS ANGELES LOCAL (an Unincorporated Association) et al., Respondents.
> L. A. No. 19407.
> ***Supreme Court of California. In Bank.***
> Dec. 16, 1947.
> "[2] ***The articles of agreement, constitution and by-laws of AFRA, both National and Local, constitute a contract with the members, and are binding on the plaintiff.*** (Grand Grove etc. of Druids v. Garibaldi Grove, 130 Cal. 116, 120 [62 P. 486, 80 Am.St.Rep. 80]; Lawson v. Hewell, 118 Cal. 613, 621 [50 P. 763, 49 L.R.A. 400]; Harris v. Geier, 112 N.J.Eq. 99, 104-105 [164 A. 50]; O'Keefe v. Local 463 of Assn. of Plumbers, supra, 277 N.Y. 300, 304; Cameron v. International Alliance etc., Local Union, 118 N.J.Eq. 11 [176 A. 692, 97 A.L.R. 594]; Amalgamated Clothing Workers v. Kiser, 174 Va. 229 [6 S.E.2d 562, 564, 125 A.L.R. 1251].) As that contract may prescribe the terms upon which membership in a union may be gained, so may it define the conditions which will entail its loss. (Polin v. Kaplan, 257 N.Y. 277 [177 N.E. 833].)(emphasis added)."

22.   Plaintiff also offers the following decision of California Court of Appeal, as an authority:

> 44 Cal.App.2d 131 (1941)
> JOSIE SMETHERHAM, Respondent,

7

v.
LAUNDRY WORKERS' UNION, LOCAL NO. 75 et al., Appellants.
Civ. No. 6537.

California Court of Appeals. Third Dist.
April 9, 1941.

"Damages may also be awarded to one who has been illegally expelled from such an organization for wages lost on account of having been deprived of the opportunity to work or to obtain employment. (Greenwood v. Building Trades Council of Sacramento, 71 Cal.App. 159, 171 [233 P. 823]; 63 C.J. 691, sec. 60.) [3] *In hearing and determining charges against a member of the organization, the executive board acts in a quasi-judicial capacity in administering the disciplinary laws and rules of the association.* (McConville v. Milk Wagon Drivers' Union, 106 Cal.App. 696 [289 P. 852].) It is true that courts will not
136
*136 interfere with the disciplining or expelling of members of such associations where the action is taken in good faith and in accordance with its adopted laws and rules. *But if the decision of the tribunal is contrary to its laws or rules, or it is not authorized by the by-laws of the association, a court may review the ruling of the board and direct the reinstatement of the member.* (Sweetman v. Barrows, 263 Mass. 349 [161 N.E. 272, 62 A.L.R. 311]; Most Worshipful United Grand Lodge, etc., v. Lee, 128 Md. 42 [96 Atl. 872, Ann. Cas. 1918E, 1174]; 25 R. C. L. 57, sec. 14.)(emphasis added)."

**COUNT I – BREACH OF CONTRACT, CODE OF DISCIPLINARY REGULATIONS FOR 2020 – STATED COMPLETE LACK OF ALL JURISDICTION IN DISCIPLINARY CHARGES**

8

23.   Plaintiff sets forth the 2020 initial directive of Defendant's "Code of Disciplinary Regulations"

"**CODE OF DISCIPLINARY REGULATIONS**

"The purpose of this Code of Disciplinary Regulations (CDR) is to set forth a comprehensive disciplinary process and structure that provides a fair hearing to ***every ACBL member (or non-member of the ACBL participating in ACBL sanctioned events)*** charged with a disciplinary infraction."

24.   In early April, 2021, a demand was sent to Plaintiff Hann by Defendant ACBL, with a mysterious request which indicated no obvious purpose for a meeting, by ACBL In-House Legal Counsel.

25.   Hann made the call, and a demand was immediately made by Counsel to record the conversation, to which Hann adamantly refused.

26.   Hann, from an official meeting in the Legislative Branch, was pressured by the Executive Branch regarding unspecified allegations of exposure at the recent meeting of the then Board of Governors, now named Advisory Council (AC).

27.   Hann established that any such exposure, if it ever happened, would have been after the meeting ended and most people departed.

28.   The appearance of the phone call, is that the Executive Branch, non-members of the Legislative Board of Governors with no

standing thereto, was trying to railroad Hann to meet their demands, with innuendo and office gossip, but without evidence.

29.   The pressure exerted by the Executive Branch was continuous and oppressive, and no reasons were given, it was simply the non-negotiable position of the Executive that the Legislative comply with its position of power as the prosecutor, an improper mix of Executive and Legislative.

30.   After numerous harassing and unrelenting E-mails, from the Executive, charges were brought, described, post.

31.   Hann then read the Code of Disciplinary Regulations thoroughly, and noted the jurisdictional caveat quoted above, which declared that, as a non-member at the time of the incident, and not at an ACBL-sanctioned event, jurisdiction was not had.

32.   Hann observes that the National Disciplinary Committee did not normally have jurisdiction over his trivial matter.

33.   However, the Executive Branch reached its long and highly questionable clutches to the Legislative Branch, by employing yet another essentially unused, unheard of, and untested By Law: "(B) Jurisdiction of Cases by ACBL Disciplinary Committee. The ACBL Disciplinary Committee has jurisdiction over:

(4) Cases in which:

(i) Circumstances make it impractical or unfair for a matter to be handled by the District; or

10

*(ii) The issues involved are of paramount importance to the ACBL."*

34.  This absolutely non-starter matter of maybe 1/50th of a second of purported exposure, which medical testimony would say is not even observable by the human eye, is not of "paramount importance" to the ACBL!

35.  It may have been of personal "paramount important to the ED and the in-House Counsel, and some unknown personal vendetta, who worked feverishly for months attempting to secure Hann's expulsion; pnfortunately, they took Hann along for their demanding, mega-roller coaster ride.

36.  Paramount is often interpreted as supreme, utmost, absolute highest, or by Collins online as "Something that is paramount or of paramount importance ***is more important than anything else.***"

27.  This is not only patently untrue, it is laughable, and would be thought by any reasonable person to be a joke, and not a serious assertion.

38.  Janet Jackson exposed her breast to over 40 Million people, including many children, one Super Bowl Sunday, without major repercussion or legal censure.

39.  One major league baseball player, on national TV, pulled his pants down after getting on base, absently mindedly thinking he was in the locker room.  Again, no harm, no foul.

40.  After a lengthy hearing, where no documentary evidence was presented or used, and Hann's testimony was apparently ignored, a sentence came down, all of which will be further described, post.

41.  Hann appealed this heinous finding and punishment, which appears to have given no weight to his testimony, or to the only document evidence in the record, a 1/50th of one second, two-frame blurry pictures, extracted from a time period after the meeting was over, with few people in attendance.

42.  Hann notes in his claims against jurisdiction that the following has some relevance, which is a subset of the master jurisdictional declaration noted above:

"(A) Jurisdiction over Persons by ACBL and National Bodies. The ACBL has jurisdiction over Incidents that involve:

(1) Persons participating in an ACBL sanctioned event or other activity, including any online event or activity."

43.  Its problem is, that a Board of Governors ***Meeting*** is what it says, and what it is, a "meeting".  For nearly a century, it has never been described in terms other than a "meeting".

44.  In ACBL language, event and activity have specialized meanings.  An event is universally utilized in the bridge playing

community to describe a bridge tournament, with tables of four people and the game of bridge being played competitively with cards being used and handled.

45. An "activity" is not a meeting, and a meeting is never an "activity". A meeting is a meeting, is only a meeting, and has never been described as an "activity" in Hann's 55 years of experience, as a participant in many, many, many ACBL meetings.

46. Thus, while the ACBL Disciplinary Committee may have had jurisdiction over tournaments or somewhat related "activities", it has never claimed jurisdiction over meetings, nor in Hann's knowledge, has it ever asserted any jurisdiction over meetings.

47. The documentary evidence shows that there was no meeting either, the purported incident took place during "informal chit chat" after the meeting was clearly called completed and finished, and the members dismissed, and a spontaneous invitation to "hang out" for a few minutes was offered.

48. Thus, it was indisputable that the ACBL Disciplinary Committee had absolutely no jurisdiction over its Hann allegations, no matter what hyped, far reaching, sanity testing theory they assert.

49. Hann also timely appealed this decision in writing on the basis of no disciplinary charges permissible under the CDRs,

13

against a person who was a non-member, and who was not participating in any ACBL-sanctioned event.

50.   The ACBL Appeals & Charges Committee failed to perform its mandatory duty to hear and adjudicate Hann's appeal from a National Disciplinary Committee, simply rejecting any consideration of the appeal, contrary to its jurisdictional mandate:

"(D) Jurisdiction of Cases by Appeals and Charges Committee. The A&C Committee has jurisdiction over:

(4) Appeal of a decision of the ACBL Disciplinary Committee . . . . "

51.   Under "Charged Party Rights", the following right was stated:

"(J) The right to appeal the final decision to the appropriate Appellate Body."

52.   Hann exhausted his administrative remedies at that point.

53.   The fraud here has been overwhelming

54.   The facts show that Hann was defrauded by the rampant violations of the ACBL in pursuing its Executive Branch Goal of removing Hann from his permanent member status of the Legislative Body, and of heavy and ongoing attempts to coerce and/or mandate Hann's exclusion from the ACBL for his life.

14

55.    The use of the term "Fraud" imputes all essential elements of civil fraud in California, which give rise to the tort action for deceit, are:

misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.

56.    The fraud here, in burying collective heads in the sand and pretending that no ruling on jurisdictions is actually a ruling, has caused overwhelming damages, and compensation is sought as determined by a properly constituted jury.

**COUNT II – BREACH OF CONTRACT – BY-LAWS – UNTIMELY CONSIDERATION OF BY-LAWS AMENDMENT BY THE ADVISORY COMMITTEE (formerly BOARD OF GOVERNORS)**

57. Hann incorporates Paragraphs 1 to 56 of this Complaint as though fully set forth herein, supra.

58.    Hann is aware that tomorrow night, June 27, 2023, the Advisory Committee will be considering an Amendment to the ACBL By-Laws.

59.   Hann has notified the AC, through its forum on the Bridge Winners online bridge discussion group, that consideration of such amendment has not been properly noticed, with an Agenda and the Business to be Transacted at the special meeting sent at least 30 days in advance.

60.   The By-Laws specifically require 30-day notice, along with an Agenda, for any special meeting.

61.   Here, the notice was E-mailed about 6 days ago, far too short amount of time for an intelligent evaluation of a complex By-Law change by the AC Membership.

62.   The AC does not have a Parliamentarian, which is necessary to separate the Chair and Vice Chair, and certainly the Board of Directors, from making uninformed and hasty decisions to proceed full speed ahead, irrespective of any actual mandates in the rules.

63.   Hann will attempt, at the start of tomorrow evening's AC meeting, to Move a Point of Parliamentary Procedure, and quash any discussion or vote on the proposed By-Laws Amendment, without the requisite Agenda and Notice.

64.   Hann expects, based on snide and acerbic comments from the Chair and Vice Chair, that they have little care, and less interest, in following the well settled By-Laws and mandatory rules.

65.   Hann seeks the court's reversal of any actions taken in hostile violation of the ACBL By-Laws, some of which may have already occurred.

**COUNT III – BREACH OF CONTRACT - FAIURE TO PROTECT AGAINST RAMPANT AND KNOWN CHEATING, RESULTING IN LOSS OF NATIONAL BRIDGE TITLE**

66. Hann incorporates Paragraphs 1 to 65 of this Complaint as though fully set forth herein, supra.

67. In 1979, at the Spring National Tournament, a highly prestigious title, the Men's BAM Team, was at stake.

68.   Hann assembled a superb squad of five top players, himself being the Captain, and the entire team played the first three sessions of bridge well, out of four total sessions.

69.   The fourth session was grueling, with 27 head to head bridge hands, against nine teams, one after the other in succession.

70.   At one point, Hann's teammates played 3 bridge hands against a pair of then young hot shots, Steve Sion and Allan Cokin, who had been having unusual success at numerous recent tournaments.

71.   Hann's teammates watched carefully as bids and plays were made, and were stunned by one bridge hand held by Steve Sion.

17

72.   Sion had an excellent strong suit, and a fine bridge hand, such that every expert would make a bid during a bidding auction.

73.   Sion remained silent, which was so far out of the ordinary for such a top player, as to been highly suspicious.

74.   Shortly, Sion became what is called the defender and leader, which starts the play by leading a card, typically from the longest and strongest suit of spades, hearts, diamonds, or clubs.

75.  Sion did not lead from his very strong suit, but instead, contrary to all typical teaching and advice, lead another suit,

76.   In the fullness of time, after completion of the thirteen 4-card tricks in the bridge hand, our side had a slight loss on the hand, to Sion's team, instead of the win that we deserved, based on what is considered normal or typical expert bridge.

77.   Hann's teammates noticed that Sion's partner only had one small card in Sion's very strong club suit, which fact makes a club lead by Sion an unfortunately, rather than good choice, but bridge players are not permitted to know anything about their partner's hand, except that learned from the bidding.

78.   Sion could never have known about his partner's lone small club from the bidding.

79.   Sion's lead of a spade, contrary to expert practice, worked very well, meshed with his partner's long and good suit, and resulted in Sion's team's winning position, which they otherwise would have lost.

80.  Hann's teammates immediately made what was always termed a "protest", a technical term in the ACBL, which meant that a Tournament Committee was demanded directly after the event, a common practice, and routinely done for each and every one who makes a "protest" within the approved time period.

81.   Hann's teammates protested very timely to Tournament Director Michael Linah, a well known administrator in 1979.

82.   Hann's teammates knew well that something had been extremely odd or "fishy", and that they felt overwhelmingly that they were cheated on the bridge hand in question, and wanted redress for the entire team.

83.   As it turns out, the deserved win on that bridge hand would have resulted in Hann's team of six experts deservedly winning the National Title!

84.   Instead, Steve Sion's team won the event, and the Hann experts placed second.

85.   The demanded Tournament Committee was granted to sll others, that night and every relevant night, but Hann's team never received their mandatory Committee Hearing, with no explanation.

19

86.   Hann's teammates repeatedly asked why they weren't getting a Tournament Committee to hear their very strong case, while seeing others going into, and being heard and adjudicated by, other Committees, which were plentiful and heard case after case until there were no more.

87.   In 1979, the right to be heard by a Tournament Committee was well established, routine, and always took place.

88.   However, no explanation was forthcoming for just why Hann's team was shunned and ignored, despite timely and vigorous protestation.

89.   There is no statute of limitations on cheating in the ACBL, and the Hann team had a rule-based, statutory, and practical right, as all others at that time, to have their so-called day in bridge court.

90.   Shortly after the Norfolk National Tournament, Sion and Cokin were caught even more red-handed, and were eventually suspended for 5 years, with apparently submitted letters of resignation, that were well concealed from the light of day.

91.   It was further learned that Defendant ACBL absolutely knew that Sion and partner were cheating repeatedly, and were completing their final investigation during the very 1979 Norfolk National Tournament.

92.   Hann's team has heretofore been denied the continuing right to have their case heard by a properly constituted Disciplinary Panel, according to the rules in 1979.

93.   It is not too late, and within the jurisdiction of Defendant ACBL, to convene that Tournament Committee, and very likely reach a decision that Sion obviously had illegally obtained information about his partner's bridge hand during the bidding, derived from the pair's placement of pencils on the bridge table.

94.   A decision reversing their patently illegal cheating, known in secret to be occurring then and there, would result in the coveted title being rightfully bestowed on the four living Hann teammates, and posthumously on the other two teammates.

95.   The ACBL did not fulfill their contract with all players at the time, to hear and adjudicate protests, because they apparently felt it would compromise their investigation, at the Hann team's great expense.

96.   The Hann team has been forced to live in the ignominy of shame for being defeated by a team that cheated for four successive difficult session of bridge, only to nose out the Hann squad by a hair.

97.   This abject wrong would not be allowed in another other sport or gaming event, but the ACBL failed in its duty to protect the integrity of the Men's BAM Team in 1979.

98.   The ACBL has always held their Sion and partner files top secret, away from anyone who asked to see what they had.

99.  After readmittance to membership in the ACBL, Steve Sion began cheating again, shortly thereafter, and was duly suspended for life.

100.  In the wake of Sion's destruction of integrity at any bridge table where he sat and played, they Hann team suffered incalculable loss, and seeks either monetary redress, or the implementation of the proper procedure based on the rules in 1979.

101.  The facts show that Hann and his expert team were defrauded by the secrecy and the perceived needs of Defendant ACBL over its innocent member(s).

102.  The use of the term "Fraud" imputes all essential elements of civil fraud in California, which give rise to the tort action for deceit, are:

misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.

103. A National Title at bridge is excruciating difficult to attain, is highly cherished, and has extraordinary value,

22

including but not limited to the opportunity to become a Grand Life Master, a distinguished group of only about 350 people.

104.  The ACBL did not follow its own mandatory procedures, rules, practices, and methods, and that great and continuing harm still stings to this day.

**COUNT IV – LACK OF FUNDAMENTAL FAIRNESS; AMORPHOUS OPPRESSIVE CHARGES BROUGHT WITH SCANT EVIDENCE, MASSIVE OVERCHARGING; REFUSAL TO CONSIDER JURISDICTION OR CONVENE A MANDATORY APPEAL, FAILURE TO CONSIDER THE TOTALITY OF THE EVIDENCE, OR EVEN TO MENTION OR CONSIDER THE ONLY DOCUMENTARY EVIDENCE**

105. Hann incorporates Paragraphs 1 to 104 of this Complaint as though fully set forth herein, supra.

**106.  California is among the states that recognize a common law right of fair procedure. It has been summarized as follows. "The purpose of the common law right to fair procedure is to protect, in certain situations, against arbitrary decisions by private organizations. As this court has held, this means that, when the right to fair procedure applies, the decision making 'must be both substantively rational and procedurally fair.'" (*Potvin v. Metropolitan Life Ins. Co.* (2000) 22 Cal.4th 1060, 1066.)**

X107.   Here, an National ACBL Disciplinary Committee had no jurisdiction to hear disciplinary charges against a non-member at the time of the incident, not in an ACBL sanction event setting.

108.   Hann was greatly over charged, perhaps uniquely in all of bridge history, with an amorphous never used allegation: "302. CONDUCT VIOLATIONS

(D) Conduct Violation Not Otherwise Specified. A conduct violation not otherwise specifically described in CDR § 302(A)-(C). The discipline imposed, if any, will be commensurate with the severity of the violation at the discretion of the panel."

109.   This charge is so vague, as to allow any interpretation of any situation as not only a violations, but one which deserves the sudden death punishment, the permanent banishment from organized bridge in the USA.

110.   Can any reasonable person imagine a state or federal law called "Unspecified Conduct, and subsequent unspecified punishment", which is precisely what happened here.

111.   For a documentary 1/50th of a second alleged exposure, about 5 minutes after a meeting had ended, with few members remaining, and little reason to be looking intently at screens during informal chit-chat, the following, relatively frequently used, well documented charge, was indicated: "302. CONDUCT VIOLATIONS

(C) Third Degree Conduct Violations. The following actions constitute Second Degree(sic) Conduct Violations:

(7) Inappropriate hygiene or appearance."

"(3) Appropriate Discipline. The recommended discipline for a finding that a person has committed a Third Degree Administrative Violation **is a Reprimand up to 60 days Suspension**, with an appropriate term of Probation following the term of suspension."

112. On April 22, 2021, Hann was charged, without production of evidence, of the amorphous 302(D), with the malicious and wrongful intent that the Executive Branch could expulse Hann forever, who had served the ACBL is volunteer much of his life, and held himself well in service and in achievement.

113. Others, similarly situated, such as George Jacobs, post, and Mike Passell, received pinkie slaps for far more shocking, serious and ongoing violations, of the first and/or second degree, such as brief one or two week suspensions specifically tailored so no bridge events were missed, and they were served during holiday periods.

114. The demands of the Executive Branch ED, and his In-House Counsel were the moving forces behind the charges, who investigated the charges, but secretly withheld and never released

the investigation, despite it was needed by the defense, constituting a serious Brady type violation.

115. When the charges were brought, Hann's record was included, which prominently displayed his "NON-MEMBER" status at the time of the trumped up minor purported infraction.

116. The pressure on Hann to resign, by the ED and his Advocate, was constant and severe, repeatedly saying that there was no alternative, and insisting that Hann "must" resign.

117. This, before any evidence.

118. At the evidence deadline Hann was presented with 1/50th of one second of purported exposure, and a couple of comments from the Executive Branch staff members.

119. Hann told the ED's Advocate that they had no case.

120. The Advocate then demanded a revision of the evidence submission date, when it was already past, and suddenly came up with several witnesses who made no statement whatever prior to the Hearing.

121. As the Disciplinary Hearing started on or about mid-July, 2023, Hann immediately made an oral motion to dismiss the charges for complete lack of jurisdiction.

122. The Committee Chair, an attorney in private life, stated that it would be decided at the end of the hearing, subjecting

Hann to about 3 hours of the most disgusting, repressive, one-sided, hostile atmosphere he's ever encountered.

123.   The jurisdictional motion was never addressed at the end of the meeting as promised, and as any attorney or court well knows, jurisdiction must be the first and foremost consideration for any judicial body.

124.   At that Hearing, Hann was ambushed by witnesses who made incredulous and flowery of ongoing nudity, and seeing lots of flesh, and on and on, none of which had ever filed a formal written complaint.

125.   The recorded video had shown 1/50th of a second of purported exposure; none of the witnesses ever testified to that, nor was it even admitted into evidence.

126.   Near the end of the lengthy Hearing, the Advocate for the ED made a closing statement, but the Committee Chair brushed off Hann and did not allow him to sum up the non-case.

127.   The Committee soon submitted a written report, without any findings whatever of fact, or conclusions of law, and simply imposed a lengthy suspension over 3 National Tournaments, effectively a year, in complete and utter discord and contrast with those much more seriously situated.

128.   Hann made a formal, written appeal to the BoD's Appeals and Charges Committee, yet again alleging complete lack of all

jurisdiction, and lack of fundamental fairness in magically making witnesses appear after the evidence deadline, and not considering the video of the meeting, or Hann's testimony under oath, sent by receipted E-mail to its Chair.

129.  Despite the Charged Party's right to appeal, the Chair of Appeals wrote a terse non-comment such as "not considered" or "denied".

130.  California requires fair procedure, but none was had, and that lack was the proximate cause of heavy and ongoing damages to Hann, for which he seeks monetary compensation.


**COUNT V – DEFAMATION BY BREACH OF WRITTEN CONTRACT, THE BY-LAWS, CODES, PROCEDURES, RULES AND PROPRIETY FOR BRINGING DISCIPLINARY CHARGES WITHOUT JURISDICTION, BY ADVOCATE FOR THE ACBL ED, AND BY THE OUTRAGEOUS RECORD OF "SUSPENDED PENDING HEARING"**

131. Hann incorporates Paragraphs 1 to 130 of this Complaint as though fully set forth herein, supra.

XX.  The California Code 43 states as follows; Plaintiff cites the provisions, highlighted, of Code 43:

DIVISION 1 - PERSONS
PART 2 - PERSONAL RIGHTS
Section 43.
Universal Citation: CA Civ Code § 43 (2019)
43.

Besides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, **the right of protection** from bodily restraint or harm, **from personal insult, from defamation, and from injury to his personal relations**.

132.  The California Statute of Limitations for Defamation by Written Contract is 4 years; the Disciplinary proceeding occurred in July, 2021.

133.  As previously delineated, the ACBL directive was clear as a bell.  Disciplinary charges could not be brought against a non-member who was not participating in any ACBL-sanctioned event.

134.  Thus, but contract, bringing the charges and convening the Disciplinary Committee were contrary to the CDRs, and defamatory per se.

135.  On or about April, 2021, Plaintiff Hann, a permanent member of the ACBL Board of Governors (since renamed the Advisory Board, or AC), sat through a 2 hour and 5 minute (2:05) Meeting.

136.  At 2:05 of the Meeting, the Chair clearly and unequivocally stated that the meeting had ended, and that any and all official business was ended, but suggested that a few people could remain on Zoom for informal chit chat.

136.  At about 2:10 of the now informal non-meeting, Plaintiff arose for the very first time, and apparently neglected to avert his video feed, thus seemingly and unknowing to him, his body cover

was open in a desert climate and $1/50^{th}$ (one-fiftieth) of a second was captured on the video feed.

138.   There was no further exposure, because Hann never got up from seated before, or after, that $1/50^{th}$ of a single second.

139.   Before the Disciplinary Hearing, and on the eve of an upcoming Board of Governors/AC Meeting in July, 2023, the ED "suspended Hann pending hearing", which rare usage was essentially unheard of, and understood only to apply to the most horrific cheaters, who could wreak havoc with their cheating up to the time of a Hearings.

140.   From CDR 402: "Such Suspension Pending Hearing should be *rarely issued – only in extreme cases or when a hearing is delayed due to the fault of the person charged.*

141.   Hann did not delay his time to review evidence; it was the Advocate for the ED, who appears to have manufactured "evidence" after the due date for submission of evidence, which took extra time.

142.   This suspension intentionally and maliciously prevented Hann from attending the Board of Governors Meeting the very next day, as an otherwise life member of the Group.

142.   This Suspended Pending Hearing, "SPH", drew discussion, concern, and aspersions regarding Hann, on the 20,000 member, world recognized, highly active bridge player's blog.

144.  In one noted comment, a Bridge Winners participant said "I wonder why a well known member of Bridge Winners was Suspended Pending Hearing", a well-understood and embarassing implication that cheating at cards was likely, the most heinous crime in all of bridge.

145.  A popular member of Bridge Winners, who keeps track of bridge play records for the entire ACBL membership, reported in a phone call that several people had called him, and ask about Hann's playing record, again, in humiliating context, clearly asking about any evidence of Hann being a cheater at the card table.

146.  This undercurrent was the direct and proximate result of publishing Hann's name on a public Disciplinary List as "Suspended Pending Hearing",

147.  At the subsequent National Disciplinary Committee on or about July, 2021, where Hann had properly brought a Motion at the start that the Committee had no jurisdiction, Plaintiff Hann was ultimately forced to, and did so testify.

148.  Plaintiff Hann also testified under oath that there was no possibility of other exposure than the $1/50^{th}$ of a second after the meeting had ended, because only his face and maybe upper chest could have149been otherwise showing on the video feed.

149.  At the Disciplinary Committee, the Advocate for the Charging Party who was the Executive ED, made a scathing and

31

outrageous opening statement, in which he defamed Hann with the most heinous of inflammatory and over-dramatic commentary, such as "Hann's actions were of a sexual nature", and "I'm afraid that Hann will show up at any in-person meeting some time while completely nude".

150.  This defamation was prohibited by the CDRs and their promise of a "fair hearing" (supra), forming the basis of this Count for defamation by contract.

151.  Hann, who had never shown up anywhere in the ACBL, from 1967 to the present, in any state of undress, and whose face and perhaps upper chest was the only part of his body visible for the entire 2:05 time of the Meeting, was flabbergasted, humiliated, and debased on the vicious nature of the entire opening statement.

153.  The Advocate for the ED never produced an iota of formal written complaint from the valid members of the then Board of Governors in attendance at the relevant April, 2021 Meeting.

154.  Nevertheless, the Advocate, after the bar date for providing all evidence, and having no case that could pass the giggle test, somehow came up with a number of witnesses who made outrageous and incredulous declarations and statements under oath, despite never coming forward by the time production of evidence had closed.

155.   None of the Charging Party's late witnesses were able to describe any time that they purportedly saw Hann "unclothed". Their testimony directly contradicted Hann's, and wildly diverged.

156.   Plaintiff seeks monetary relief from this and other, known and unknown, blatant defamation by written contract, the CDRs, including "Suspended Pending Hearing".

**COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; FAILURE TO PROTECT AGAINST CHEATING CAUSING MENTAL TRAUMA AND CONFLICT; PHYSICAL INJURY FROM ONGOING EMOTIONAL TRAUMA AND LOSS AND HEDONIC DAMAGES**

157. Hann incorporates Paragraphs 1 to 156 of this Complaint as though fully set forth herein, supra.

158.   Plaintiff has suffered great and continuing general damages in California, including but not limited to, loss of reputation, shame, mortification, and hurt feelings.

159.   Defendant's rudimentary civil due process and other incursions have caused, and continue to cause, great and debilitating physical injury, and physical illness and suffering by Plaintiff, due to Defendant's mental anguish and knowingly intentional inflictions of emotional distress.

160.   Plaintiff has been sleep deprived, and in emotional turmoil, particularly when facing months of demand to resign permanently, and time ruminating about the National Title that was wrongfully denied he and his team.

161.   By exposing him to ongoing Discipline, Suspension Pending Hearing, Suspension, prohibition from attending his cherished Board of Governors/AC, Defendant ACBL has intentionally caused him troubling emotions, which have severely affected his body functions and maladies, causing inflammation and reduced bodily functions.

162.   The denial of privacy rights raises all elements of privacy rights violations in California, including but not limited to: 1) intrusion on a Plaintiff's seclusion or solitude; 2) public disclosure of embarrassing private facts about a person; 3) publicity that places a person in a false light in the public eye; and 4) appropriation, for the defendant's advantage, of Plaintiff's name or likeness.

163.   Hedonic damages, one component of suffering, are fully implicated and will be sought thereto against Defendant for abject denial of happiness, privacy, civil, California inalienable rights.

164.   Hann's quality of life, and ability to enjoy life, were greatly compromised, both in pursuing a deserved and mandatory Hearing against the cheating of Steve Sion and Partner, and due to

34

the overwhelming 4 months of intense involvement in defending himself from the ED and his Advocate, and from Discipline in the complete absence of all jurisdiction.

165.   All Defendant's outrageous defamations and other violations were willful, knowing, intentional, and will be demonstrated to be the proximate and/or legal cause of great and continuing physical injury and physical sickness experienced by, and damages to, Plaintiff.

166.   Defendant acted with actual malice, arbitrarily and capriciously, and in doing so, denied Plaintiff his protected, guaranteed rights.

167.   Defendant have demonstrated, by its own words and writings and actions, that they knew, or should have known, of the wrongs and violations they committed, with hostile disregard for rudimentary civil due process and fundamental fairness, and for the law and for the truth of the matter.


**COUNT VII – VIOLATIONS OF THE CALIFORNIA CONSTITUTION**

168. Hann incorporates Paragraphs 1 to 167 of this Complaint as though fully set forth herein, supra.

**CALIFORNIA CONSTITUTION**

169.   The California Constitution reads, in part:

California Constitution; Article I, Section 1
"**All people** are by nature free and independent and **have inalienable rights**. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, **and pursuing and obtaining** safety, **happiness, and privacy**."Ru

170.   Based on violations of the CDRs, and the Rules and Procedures, resulting in 45 years of secrecy, failure to protect against known cheaters, and humiliating and traumatic processes that were unauthorized and prohibits by the Rules, Procedures and Rights afforded all others, that Hann has been denied the Constitutionally guaranteed rights of pursuing and obtaining happiness and privacy.

171.   Hann has been despondent at times that he was denied potential achievement of the pinnacle in the ACBL, that being the designation as Grand Master, upon winning a National Title, and amassing 10,000 master points.

172.   Hann has been traumatized by the ED and Advocate's pressures, threats and intimidations, in the absence of any evidence, to resign from the ACBL for life, which occurred during an extended period of April and May, 2021, and was a demand at the unlawful Disciplinary Committee in July, 2021.

173.   That the Disciplinary refused to consider Hann's truthful testimony, and their own documentary evidence of nothing but 1/50th of a second of possible exposure, which is unobservable

to the naked eye, described by one of Hann's friends as "using an elephant to squash a flea".

174.   Instead, the Disciplinary Committee suspended Hann for three entire National Tournaments and three entire Board of Governor/AC Meetings in which Hann is past Chairman and Life Member, without making any findings of fact.  In contrast, the following recent action by the BoD merited 14 days, carefully arranged to begin the day after the ending of a National Tournament:

> "George Jacobs (NR Review)
> In the matter of George Jacobs, the Committee, pursuant to CDR 406(B)(3), rejected the Negotiated Resolution but provided the following condition for acceptance: rather than the recommended sentence of 1 year Probation, a sentence of 14 days Suspension, during which the party will be a member "Not in Good Standing," followed by Probation for a period of 90 days.
> The Committee determined that the recommended sentence was inadequate, given the pattern of conduct in a series of incidents over the course of two North American Bridge Championships tournaments.
> Mr. Jacobs accepted the condition and a new Negotiated Resolution was executed and approved. He admitted to a violation of CDR 303(B)(1) Excessively derisive, degrading, or insulting comments made about an ACBL official and 304(D) Improper conduct toward any ACBL official in performance of their ACBL duties or functions. His 14 day suspension will begin on March 21, 2023, during which time he will be a "Member Not in Good Standing".
> THE REPORT WAS RECEIVED BY THE BOARD"

175.   By denying Hann the California right to happiness and privacy by persecuting him disproportionally for a life sentence, for the equivalent of a harmless and innocuous clothing malfunction,

Hann has, for long periods, been denied deserved and earned happiness and privacy.

176.   Plaintiff seeks a total sum of $750,000, as ultimately determined by a properly constituted jury, for the entirety of the sum of the violations herein.

**RELIEF REQUESTED**

177.   Plaintiff Hann hereby requests that this Honorable Court forthwith find and order forthwith that Defendant:

a)   Open and provide all investigatory, disciplinary, and any other files, including those held by any legal counsel at any time to the present, that have any relation to the complaints, the detection, the cover up, the prosecution, the resignation and disciplines, and the ultimate permanent suspension, of Allan Cokin and Steve Sion for cheating, at the 1979 Norfolk Men's Team and everywhere else, from their initial time of membership, to their final termination.

b)   Defendant rescind actions contrary to its By-Laws, Codes, Rules, Procedures and Customs, and apologize for the violations thereto, as determined by a properly constituted jury.

c)   Defendant compensate Plaintiff Hann in the amount of at least $750,000 in total, for the monetary compensatory damages for physical injury due to emotional distress, including but not

limited to intentional infliction of emotional distress, intentionally, maliciously, and knowingly inflicted.

d)  Defendant convenes the ACBL Committee which was timely demanded by the Hann team at the 1979 Spring Norfolk Men's Team, and provide it all the evidence and records prayed for above.

Dated this 26th of June, 2023.

*Gary S. Hann*
_____
Gary S. Hann, Plaintiff